UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| v. | § § § | NO. 7:10-CR-292 |
| MARCUS DESHAW HICKS | § | |

### MARCUS HICKS' MOTION FOR COMPASSIONATE RELEASE SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

TO THE HONORABLE DAVID COUNTS, UNITED STATES DISTRICT JUDGE FOR THE WESTERN DISTRICT OF TEXAS:

Marcus DeShaw Hicks has moved this Court, pursuant to 18 U.S.C. § 3582(c)(1)(A), to reduce his sentence to time-served, or, alternatively, to a term of home-confinement. The government opposes that motion. Hicks replies.

**I**

Hicks's request is based on the extraordinary and compelling reasons presented by the COVID-19 pandemic, his recent infection with the virus, his continuing symptoms, and his vulnerability to adverse consequences from consequences of his infection, and the possibility of reinfection. Prisoners who contract Covid-19 have been dying at three times the rate of members of the general public who contract Covid-19, and prisons are neither designed to be nor capable of being health-protection units, as the wide spread of Covid-19 in prisons shows. These facts constitute extraordinary and compelling circumstances. Marcus Hicks should not have to risk

1

serious illness or death after serving 10 years in prison, and the 18 U.S.C. § 3553(a) factors confirm that. The Court should reduce Hicks's sentence to time served or to a term of home confinement.[1]

## II

The government responds that Hicks should remain incarcerated. The government asserts that Hicks is now relatively safe because he has already been contracted Covid-19 in prison, that BOP is doing the best it can, that Hicks is a danger to the community, and that the 18 U.S.C. § 3553 factors do not support release. *See* Gov't Resp. 3-10. These arguments are unpersuasive. Hicks remains very vulnerable, both because of his own health issues and because prison is one of worst, if not the worst, places for exposure to and negative outcomes from Covid-19. It is true that BOP is trying; it is also becoming increasingly clear that BOP is overwhelmed. Finally, Hicks is not a danger to anyone or to the community, and, as shown at length in Hicks's original motion, the § 3553 factors very much favor his release.

## III

The government does not deny that Hicks faces increased risks because of his obesity and his diabetic condition. And while the government quibbles that Hicks is pre-diabetic, the fact is that Hicks is on medicine for a diabetic condition. *See* Motion Attachment 6. The government also acknowledges, if grudgingly, that Hick's hypertension also likely puts him at increased risk. Gov't

---

[1] The government argues that a district court cannot order BOP to house Hicks in a home confinement setting because the Court cannot control where Hicks serves his sentence. That is so, but that is not what Hicks asks in the alternative. The Court may sentence (here reduce the sentence) a defendant to home confinement, and that sentence does not usurp any BOP authority as to the place of confinement. And the Court could impose a reduced sentence of effective home confinement by reducing Hicks's sentence to time served and modifying his conditions of supervised release to require that (until May 9, 2022, his current release date) he be at home and on a monitor except for his work hours at the job that awaits him with Quality Electric.

Response 4 n.5; *see* https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-underlying-medical-conditions.html (last visited September 15, 2020); *see also United States v. White,* 2020 WL 4530931, (M.D. Tenn Aug. 6, 2020) (granting § 3582 motion and collecting cases recognizing the danger hypertension causes in Covid era).

And of course, Hicks faces an greatly increased risk simply by being in prison. *See* Brendand Saloner, et al, *Covid-19 Cases and Deaths in Federal and State Prison,* Journal of the American Medical Association, Pub. Online, July 8, 2020 at http://jamametwork.com/journal/jama/fullarticle2768249 (last visited September 15, 2020).

The government ventures that Hicks need not worry because he has already suffered through a Covid-19 infection once. Gov't Response 9. But this ignores, in addition to Hicks's individual risk factors, the emerging and disturbing reality of recurrent infections with Covid-19. A subsequent infection can be worse than the first infection. https://www.statnews.com/2020/08/28/covid-19-reinfection-implications/ (last visited September 15, 2020). That's a distressing fact to us all, but it is a particularly distressing fact for Hicks. Hicks suffered significantly from his first infection. See Motion 4 (detailing illness). He still has not recovered. He continues to suffer from headaches, muscle pain, and persistent chest pain. The government categorizes the chest pain as mere "chest wall pain" but admits it has been treated only with pain medication. Gov't Response 3. No further investigation of the chest pains Hicks is suffering has been done, no x-rays, no scans. This, even though it is now commonly known that Covid-19 has been shown to cause significant damages to many different human organs, and create a danger of long-term health complications. https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-long-term-effects/art-20490351 (last visited

3

September 15, 2020); https://www.statnews.com/2020/07/27/covid19-concerns-about-lasting-heart-damage/ (last visited September 15, 2020).

Thus, far from being safe, Hicks may be at a greater risk than he was before he was infected. He seeks release because of the illness he has suffered, the consequences of that illness, and the danger that he faces of reinfection. That Hicks has been previously infected is not reason to deny release.[2] *See, e.g., United States v. Common,* 2020 WL 3412233 (C.D. Ill. June 22, 2020). The *Common* court granted compassionate release to an inmate who had already been infected. The court relied on "the very real risk of relapse or reinfection," as well as the long-lasting consequences of a first Covid-19 infection, noting that "for some people affected by COVID-19, a full recovery may not happen for years, if at all." 2020 WL 3412233 at *4. Hicks has lasting effects from his first bout with the virus. He has risk factors that make him vulnerable to a reinfection by the virus. And FCI Seagoville, where Covid-19 ran rampant the first time, despite BOP's good-faith efforts, is a terrible place for him to be. The *Common* court recognized the danger of keeping a once-infected, weakened inmate in prison: "Given the large number of confirmed cases of COVID-19 at FCI Forrest City Low and based on the currently available scientific data, Defendant continues to be at risk of imminent harm based on his underlying medical conditions." *Id.* at *4.

Hicks's situation presents extraordinary and compelling circumstances warranting compassionate release.

---

[2] *United States v. Russo,* 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020) cited by the government at page 9 of its response took a narrow view of the defendant's motion and denied relief because the inmate had become infected after seeking release to avoid infection. Hicks seeks relief because of his illness, his continuing vulnerabilities, the very real danger of reinfection, and the danger posed to him by the inevitably dangerous crowded conditions in prison.

**IV**

The government states that BOP is doing what it can to keep inmates safe. That doesn't change the reality that "[a]lthough the BOP is doing its best to keep the disease in check, the forced closeness of inmates and staff and the inability to enforce social distancing standards has proven" BOP to be "no match for the virus." *United States v. Armstrong,* 2020 WL 4366015 * 3 (S.D. Cal. July 30, 2020). So wrote the district court for the Southern District of California in considering a release motion from an inmate held at FCI Terminal Island. The *Armstrong* court found it important that an inmate was hospitalized and then died after he was pronounced "recovered" by the BOP at the FCI Terminal Island facility. *Id.* at *2. The court granted Armstrong, who had also been pronounced, recovered, compassionate release. *Id.* at *4.

FCI Seagoville where Hicks is imprisoned experienced the worst outbreak of any federal facility, worse than FCI Terminal Island. *See* https://www.wfaa.com/article/news/health/coronavirus/federal-prison-in-seagoville-reports-first-covid-death-as-infections-soar/287-8687438d-777a-44d1-8cce-83ddd14d748. While the government offers general assurances that it is doing what it can–and those assurances can be accepted–a recent report on the less-hard-hit FCI Terminal Island shows why those assurances are insufficient. The Central District of California recently appointed an independent expert to investigate the situation at FCI Terminal Island. The report prepared by Dr. Michael Rowe on the situation at Terminal Island shows how worrisome things are, especially for vulnerable inmates. *See Wilson v. Ponce,* 2:20 CV 04551 docket number 74.[3] Dr. Rowe found that "huge risks"

---

[3] Dr. Rowe was no outsider to the prisons. From 2009 to 2019, he served as a doctor with California Correctional Healthcare Services at San Quentin state prison. See Rowe Report at 77, *Wilson v. Ponce,* 2:20 CV 04551 docket number 74.

remained for vulnerable inmates. Rowe Report at 10, 35-36. The expected second wave of the virus will tear through prisons. The government's assurances that BOP is trying may be accurate, but in the face of this dangerous virus in cramped, crowded conditions, none of its efforts are sufficient to remove the extraordinary and compelling risks run by vulnerable inmates such as Hicks.

## V

The government's claim that Hicks presents a danger to the community is simply incorrect. The government points to Hicks's criminal history, Gov't Response 5-6, and, while that history is not something Hicks is proud of, that history neither defines him nor suggests he is a danger to anyone. Nor does his Pattern Risk Score upon which the government relies cursorily. Gov't Response at 6. In fact, the risk score actually helps to show how Hicks has changed.

Hicks has a criminal history score that places him in category VI. None of those convictions were for offenses against persons. All but one, which was for a failure to identify offense, were drug offenses. None involved large amounts of drugs. All were wrong. Hicks knows that. He knew it then, but now a much older man, he understands fully why his actions were wrong. He understands how he hurt himself, let down his family, and failed society by failing to follow its laws.[4]

But the criminal history score, and its disproportionate weight in the risk score, does not

---

[4] Hicks's mother Sonya Spencer recently said to counsel that "this is the longest Marcus has been away from home." In part, that is because one could say that the state of Texas went easy on Hicks, and the federal government brought its full weight against him. Whatever the merits of the federal government compensating for the choices of the state, Hicks has served ten years of a federal drug sentence and no justice is obtained and no point is made by holding him further at risk to his long-term health and even his life.

6

make Hicks a violent or dangerous person. None of his criminal history involved violence. The government says Hicks was hired, neglecting to mention it was for a paltry $200, as "security." Gov't Response at 6. Apparently, security meant presence (though Hick's was not a commanding presence at 5'7" and 180 pounds. *See* PSR paragraph 53 (2011). The record does not show that any gun or other weapon was wielded or carried. The record does not show that any threat was made. Hicks did wrong in involving himself in drug sales, but no evidence shows he posed a danger to anyone when he committed those crimes. He does not pose one now.

In an interesting way, Hicks's pattern risk score from BOP shows that and show his maturation and growth of responsibility. Hicks had a criminal history category of VI. That means he started with high score of 40 points on the pattern risk form, a score that almost guaranteed he would end up with a high risk score. But that, as shown, does not in any way translate to dangerousness. Hicks has the criminal history points, but he had no offenses involving violence or danger to others. And the many programs that Hicks has participated in prison lower his risk score. Those downward points for learning how to be an electrician and an air conditioner tech and his personal maturation, seen by his mother, his sister, and others, see Motion at 3, 8, are a far better measure of Hicks than the government's speculation that he must be a danger to others because he committed drug offenses. Hicks poses no danger to anyone.

VI

The government also asserts that the § 3553(a) sentencing factors weigh against Hicks's` release. GOV'T Response 7-10. In making this assertion, the government largely just reiterates its claims from the original sentencing, as if the real threat of illness and death to Hicks from Covid-19 in prison has no role to play in the § 3553 consideration. The government says, for instance,

7

that "the nature, circumstances, and seriousness of Defendant's offense remain unchanged and reinforce the just nature of this Court's sentence." Gov't Resp. 7. But the Court is not, in ruling on a § 3582(c) motion, asked to repeat what was found before. The extraordinary and compelling circumstances that now exist require a new weighing of the § 3553 factors in the light of those extraordinary and compelling circumstances. The government's assertions make no real argument for keeping the sentence; they amount to an insistence that the sentence should not change, though the world has changed greatly and, for Hicks direly.

The fact that the world and the circumstances have changed does affect what is a sufficient sentence, what is a sentence that promotes respect for law, and what is a just sentence. Cf. 18 U.S.C. § 18 U.S.C. § 3553(a)(1), (a)(2)(A). The fact that the world is different and that those differences vitally affect Hicks means that his history and characteristics take on different meaning; so too does his offense. Hicks's vulnerability to serious damage from Covid-19 critically affects the determination of what is a sentence that is greater than necessary.

The overarching command of § 3553 is that a sentence be no longer than necessary to achieve the purposes of the statute. *See Kimbrough v. United States,* 552 U.S. 85, 101 (2007); *Dean v. United States,* 137 S. Ct. 1170, 1175 (2017). In the light of Hicks' illness and the inadequacy of the BOP's response to his illness, any time beyond the time he has served in greater than necessary.

Hicks has a presumptive release date, according to the BOP inmate locator, of May 9, 2022. The question thus is whether the circumstances of a decade-old offense that involved no firearms or violence warrant keeping Hicks under a sentence that may result in serious adverse consequences for Hicks' health. The answer is no. Nothing in the circumstances of the offense

suggests Hicks is dangerous or requires incapacitation until May 2022. The circumstances of Hicks' health argue strenuously against continued incarceration and increasing the risk of adverse long-term or even fatal health consequences.

In his motion, Hicks discussed the § 3553(a) factors and why they counsel a reduced sentence under the compassionate release provision. Briefly recapitulated, Hicks' personal history and family circumstances strongly favor a sentence of time served. He is a different man[5]. His family can see that. His family waits to provide support, including a home and a job. Hicks has been jailed on this offense for over a decade. That is a long time, condign to the offense. Time enough also for Hicks to understand his wrong and to commit to not repeating it. The reality of daily deprivations of freedom, of dignity, of any chance for ease that ten years in prison brings is draining and cumulative. Time served of more than 10 years, since April 2010, is what a compassionate release sentence would mean. That sentence is now just and sufficient.

The government's § 3553 arguments largely consist of its claims that Hicks will be dangerous and will recidivate. See Gov't Response 7-10. As shown above, Hicks is not dangerous. As shown in his original motion, ten years has been enough to teach him not to offend again. The government suggests that a time-served sentence would be disparate, but that is not so. Hicks received no acceptance-of-responsibility adjustment, though he pleaded guilty, because he pleaded late. But he still pleaded guilty, and now the Court can recognize that an acceptance adjustment would have placed Hicks in a range ( 27, VI, 130 to 162 months) where his sentence would have

---

[5] Hicks told counsel the other day that he is currently reading The Art of Persuading Judges, written by Justice Antonin Scalia and Bryon Garner. That's not for show. Counsel didn't tell him to read that book (counsel hasn't). It's simple an example of how Hicks has changed and grown in the last decade.

9

almost exactly what is now a time-served sentence. Thus the government's claim that a great disparity would exist is incorrect. A sentence of time served is warranted.

The § 3553 factors weigh very differently now than they did at the time of Hicks's sentencing in 2016. They weigh in favor of a sentence reduction.

## Conclusion

For these reasons, as well as those in his original motion, Marcus Hicks asks that the Court grant his motion and reduce his sentence to time served.

Respectfully submitted

/s/ Philip J. Lynch

PHILIP J. LYNCH
Attorney at Law
17503 La Cantera Parkway, Ste 104-623
San Antonio, Texas  78257
Tel: (210) 883–4435
State Bar Number: 00789880
Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on September 16, 2020, I electronically filed this Motion with the Clerk of Court using the CM/ECF system which will send notification of such filing to John F. Bash, U.S. Attorney for the Western District of Texas (attn.: assistant U.S. attorneys John Fedock and Joseph H. Gay Jr.) via electronic mail.

By:   /s/ Philip J. Lynch

Philip J. Lynch

Attorney for Defendant-Appellant

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CAUSE NO. 10-CR-292 |
| § | |
| § | |
| MARCUS DESHAW HICKS, § | |
| § | |
| Defendant § | |

**ORDER**

The Court has considered Marcus Hick's motion to reduce sentence for a compassionate release under 18 U.S.C. § 3582(c). The Court finds that the motion is well taken and should be GRANTED. It is ordered that Hick's imprisonment sentence is reduced to time served. Hicks will be required to serve the eight-year supervised-release term imposed at sentencing. Hicks shall quarantine himself for 14 days immediately following his release, subject only to his needs to receive medical treatment.

DATED this _____ day of _____, 2020

_____
David Counts
United States District Judge